desire to retain stock rather than to sell it to others at a lower price than they expected to realize later. Certainly those who bought the syndicate stock at 50 cents considered it worth more, since they simultaneously bought treasury stock at $1 a share. We have had presented to us no better evidence of the value of the 153,579 shares than the market price obtained on sales of the 546,421 shares of like stock, which was 50 cents a share. Accordingly, the gain realized by the taxpayer from the sale of the assets of the Hopewell Petroleum Co. to the Belle Point Oil Co. was $41,457.83.

---

## APPEAL OF BENJAMIN J. SCHIFF.

Docket No. 4742. Submitted November 30, 1925. Decided February 9, 1926.

*M. Manning Marcus, Esq.*, for the taxpayer.
*A. H. Murray, Esq.*, for the Commissioner.

Before MARQUETTE, MORRIS, GREEN, and LOVE.

This is an appeal from the determination of a deficiency in income tax for the years 1921 and 1922 in the amount of $3,453.52. The deficiency arises from the Commissioner's determination that certain moneys received by the taxpayer were dividends.

### FINDINGS OF FACT.

1. During 1917, the taxpayer was president of the Schiff & Co. State Bank, of Chicago, Ill., and the owner of 1,860 shares out of a total of 2,000 outstanding shares of its capital stock.

2. The bank sustained serious losses during 1917 through its dealings in Russian rubles. To make good these losses, the taxpayer contributed to the bank $49,000, which was accepted by a formal resolution of the directors expressing appreciation of Schiff's action, but declining to assume any liability for the deposit. The bank sustained a net loss of $33,805.20 for 1917. No contribution was made by any of the other stockholders.

3. The payment to the bank was set up on its books as a credit to the "Reserve for Contingencies Account." No interest was ever credited or paid thereon, and the amount was included in the bank's invested capital for income-tax purposes as paid-in surplus, from October 30, 1917, to December 31, 1921.

4. On December 22, 1921, the bank's directors, by formal resolution, ordered the payment to the taxpayer of $25,000, as a partial refund of the $49,000 advanced by him in 1917, as follows:

By the unanimous approval of all the five Directors present at this meeting, it was resolved and ordered that the sum of twenty-five thousand dollars ($25,000.00) be paid to Benjamin J. Schiff within thirty days from date, as a

partial refund to him, to apply on the forty-nine-thousand dollars ($49,000.), which he advanced as a capital contribution to the funds of this bank in September, 1917, to help the bank cover a large depreciation in Russian Rubles Account, which transaction is mentioned in paragraph 3, of the Minutes of Directors' Meetings, as of October 30, 1917; and it is also ordered that the said Twenty Five Thousand Dollars ($25,000.00) shall be charged to the reserve for Contingencies Account.

5. On March 17, 1922, the payment of the $24,000 balance was likewise ordered by the following resolution:

By the unanimous approval of all the five Directors present at this meeting, it was resolved and ordered that the sum of Twenty-Four Thousand and no/100 Dollars ($24,000.00) be paid to Mr. Benjamin J. Schiff, within thirty days from date, as a refund to him, to apply on the balance of the Forty Nine Thousand and no/100 Dollars ($49,000.00), which he advanced as a capital contribution to the funds of this bank in September 1917, to help the bank cover a large depreciation in Russian Ruble Account. This transaction is mentioned in paragraph 3 of the Minutes of the Director's meeting, as of October 30, 1917.

6. The bank's earnings, accumulated since 1917 and on hand at the time payments were made to the taxpayer in 1921 and 1922, were more than sufficient to meet the total payment of $49,000.

7. During 1917, the bank's stockholders, in addition to the taxpayer, were five in number, who held 140 shares out of 2,000 shares outstanding. In 1921 and 1922, there were six stockholders, in addition to the taxpayer, and their holdings were 240 shares out of 2,000 shares.

8. At the time the payments were made to the taxpayer during 1921 and 1922, no dividends or other payments were made to any of the other stockholders of the bank.

### DECISION.

The deficiency determined by the Commissioner is disallowed.

---

## APPEAL OF CALIFORNIA POULTRY CO.

Docket No. 112.    Submitted June 30, 1925.    Decided February 9, 1926.

*Hayes Hall, C. P. A.*, for the taxpayer.
*A. Calder Mackay, Esq.*, for the Commissioner.

Before GRAUPNER, TRAMMELL, and PHILLIPS.

This is an appeal from the determination of a deficiency in income and profits taxes for 1918 and 1919 in the amount of $5,332.84. The deficiency arises from certain adjustments made by the Commissioner, increasing the taxpayer's net income for those years, to which adjustments the taxpayer takes no exception, and from the exclusion from the taxpayer's invested capital of certain amounts, which it